this simply because they are attorneys, and are somehow given the benefit of the doubt simply by virtue of the fact that they went to law school and passed a Bar exam.

In the Third Paragraph of his Memorandum of Law, Mr. Shoemaker attempts to convince this Court to dismiss this action by tugging at the heartstrings of the Court. He describes the Defendant Ms. Charles as a hardworking nurse, who works so hard to support her daughter only to be subjected to "needless and frivolous lawsuits and expenses". Nevertheless, it is clear that Defendant Glenda Charles would not be a part of this litigation if she had not signed an Affidavit, chock full of false allegations, prepared by the Defendant attorneys and filed in the New York State Supreme Court in support of their efforts to force the Premises into receivership.

Moreover, this Court should be wary of allowing the Defendant Glenda Charles to tug at its heartstrings, because, upon information and belief, the Defendant Glenda Charles and her attorneys have tried to do the same to me.

On February 10, 2016 at 6:58 pm I received an email (Exhibit 4), directed to Paul Shoemaker's law firm, ccing me, from Glenda Charles which reads: "Please inform me of the response as soon as you get it. In the meantime I am praying for a resolution.". The response she was expecting, evidently, was my response to the letter sent to me by Mr. Shoemaker threatening me with sanctions if I failed to withdraw the lawsuit. (Exhibit 3)

Interestingly enough, the letter dated February 9, 2016 from Mr. Shoemaker threatening me with sanctions if I failed to withdraw the lawsuit was almost an identical copy of the letter sent to me from Defendant Lee Pollock dated December 15, 2016, threatening me with sanctions if I failed to withdraw the lawsuit. (Exhibit 1) There are

some minor differences between the letters, for instance Mr. Shoemaker adds a couple of more cases that reference the Rooker-Feldman doctrine which the Defendants seem to feel is relevant here, and there are a few revisions in order to make the letter not such an obvious copy of the letter from Lee Pollock, but it is evidently a copy of the Lee Pollock letter with a few revisions. Interestingly enough, neither Shoemaker or Defendant Lee Pollock followed up with their threats that I disregarded, likely because they could not justify the same and, thus, would find themselves liable for sanctions, or because they understood that, as I explained to Lee Pollock's attorney, Mr. Dawson, that if they were able to obtain sanctions it would only guarantee that I would appeal the Court's decision, regardless of whether or not my client would be able to pay me for the appeal.

Now, that is all fine. Although the letter is not a part of the record, opposing counsel may be expected and permitted to cooperate with one another in their common interest to defend against a lawsuit against their clients. However, what is curious is that, just as I received an apparently mistakenly cced email from Defendant Ms. Charles with regard to the letter from her counsel threatening me with sanctions, I had also received on December 21, 2015 at 4:11 pm an apparently mistakenly cced email from Defendant Richard Levitt with regard to the letter from his counsel dated December 15, 2015 (Exhibit 2) threatening me with sanctions, which email had the very same structure as the email cced to me by Defendant Ms. Charles: First, inquiring as to my answer to the threat, and second, setting forth his arguments as to why the case is baseless, which reads: "Did you hear from Sanchez? Some quick (and obvious) thoughts:…"

Now, I am a simple Puerto Rican Jew from Brooklyn, a so called "street lawyer" who lived in Bolivia for many years (where I owned a nightclub, helped privatize the

Bolivian oil and gas pipeline system, and owned a cattle ranch until I fell afoul of the new socialist government there), and although I may not be as legally sophisticated as opposing counsel, I know manipulation when I see it. My eyes were opened to the nature of schemes in Bolivia, where schemes and manipulation are much more in the open, since they are not so commonly punished. One thing I have noticed about schemes, is that there are a limited number of patterns which are common to them and although the variety of schemes are limitless, there are number of common patterns which pop up in these different schemes. Quite frankly, the number of patterns which pop up in the present scheme, and are laid out in the Amended Complaint, are many.

These fellows offer to pay me off to betray my client (the "silver"). When that fails, they threaten me with financial sanctions (the "lead"). When that fails, they attempt to tug at my sense of logic with a "mistakenly sent" email from a lawyer Defendant who inquires whether I will continue with the lawsuit and attempts to convince me that there is so basis for my lawsuit.

When all that fails, they once again, through a lawyer who, upon information and belief, they control, threaten me with financial sanctions with (substantially) the same letter. When that fails, they attempt to tug at my heartstrings with a "mistakenly sent" email from a woman who inquires whether I will continue with the lawsuit and attempts to convince me that she is such an innocent individual who is only "praying for a resolution".

First, they offer a bribe, then they threaten, then they beg me to drop the lawsuit.

Defendant Glenda Charles, "praying for a resolution", should be aware that the only resolution that will come her way will be obtained when she admits to her cooperation with Defendant Levitt & Kaizer, Levitt, Kaizer, and Pollock.

Unfortunately for her, however, she will likely never admit to this cooperation because, upon information and belief, not only was the Affidavit she signed perjuring herself prepared by the Defendants Levitt & Kaizer, Levitt, Kaizer, and Pollock, but the lawyer she obtained hired and paid by the Defendants Levitt & Kaizer, Levitt, Kaizer, and Pollock. Thus, this attorney will not properly represent his client because he cannot "bite the hand that feeds him".

Of course, her attorney and the other attorneys may attempt to hide who her attorney truly represents with the payment of a check by her to her attorney (which doesn't reference the cash that was likely paid to her under the table to hire this attorney) but she can't hide any cash deposit made to her account equivalent to the check paid to her "attorney". This information, of course, will only be obtained via discovery. I am asking the Court, quite simply, to permit me to deny the Defendant's motion and permit me to engage in this discovery. I believe the results of the disclosure process will be quite interesting.

The Court might consider this – how could a nurse, working six days a week to support her daughter's college, be able to afford a Harvard Law School Graduate, Class of '79, as her attorney? Harvard Law School graduates abound, but they don't normally grow on trees, and they are not normally (with the exception of me) so very affordable. Interestingly enough, Defendant Lee Pollock told me on our first meeting that he had looked me up and saw that I went to Harvard Law School, which seemed kind of odd to

mention to me at the time. Nevertheless, curiously enough, the attorney Defendant Glenda Charles "hired", Mr. Paul Shoemaker, is also, as my client informed me and I subsequently looked up and confirmed (Exhibit), is also a Harvard College and Harvard Law School graduate, just like me, and just like this Court.

Perhaps, although Harvard Law School graduates don't entirely grow on trees, and nurses who work six days a week to support their children without the support of the fathers normally aren't able to have such Harvard Law School attorneys accommodate affordable payment plans, Defendant Glenda Charles was able to hire such a Harvard Law School attorney with an affordable payment plan who would use substantially the same letter used by her more deep pocketed co-Defendants to threaten opposing counsel (also a Harvard Law School Graduate) with financial sanctions.

Or, perhaps, the Defendants Levitt & Kaizer, Levitt, Kaizer, and Pollock determined that, if appealing to professional courtesy among lawyers, if bribes and threats, and appeals to logic and emotion, would not work to dissuade opposing counsel from pursuing the instant lawsuit, then a call from a very friendly graduate from the same law school as Plaintiff's lawyer (bearing "gifts" of rational argument) might weaken his resolve. On the occasion that Mr. Shoemaker called me to request more time to Answer, which I acquiesced to, he was very polite (I thought to myself, what a nice guy) yet did not mention the fact that he went to Harvard (undoubtedly expecting that I would check, which I only did because my client mentioned it to me).

Coincidence? Perhaps. But there are too many coincidences in this matter, each of which, if it was taken alone, would be meaningless, but when taken together evidence a desperate attempt by Defendant attorneys to concrete their scheme and then wiggle

their way out of having to answer for what they have done in a Federal Court. These fellows are scared, and they should be. They will look for any angle that might provide them some advantage, and that starts by controlling the narrative by having as many Defendants in this case as possible defended by lawyers who they control. Does the Court find this incredible? Permit me to go forward with discovery, and I am confidence that the Court will be astounded by what I discover.

Please note for example, that I was astounded by what I discovered as this matter proceeded since the filing of the initial Complaint and my refusal to withdraw the matter in the face of the threat to seek financial sanctions against me in the December 15th letter, as is explained in paragraphs 135 to 142 of the Amended Complaint set forth below:

"135. On January 19, 2016, after attending a court appearance before Judge Braun's court, at which point Mr. Sanchez-Dorta was once again threatened with sanctions by opposing counsel (after opposing counsel had failed to follow through with its previous threat to request sanctions), and Judge Braun refused to recuse himself from handling the matter (he ultimately recused himself on January 28, 2016), at which appearance opposing counsel and the court once again pressured Mr. Sanchez-Dorta to force him to pay any rents received from the Premises to the Receiver, Mr. Paul Shneyer, to avoid motion practice for contempt of court (at which time Mr. Sanchez-Dorta informed those present at the court conference that, since the rents were Mr. Wayne Charles primary source of income, that they were forcing him to choose between eating and being held in contempt of court), Mr. Sanchez-Dorta visited the New York County Clerk's Office to investigate any cases against Mr. Charles.
136. While there, Mr. Sanchez-Dorta reviewed a separate foreclosure case, Emigrant Savings Bank v. Wayne Charles, New York Supreme Court County Index Number 81011/2012 and discovered things about that case which, quite frankly, perplexed him. The printout of that case, on January 19, 2016, reveals that there are two documents that have been scanned and filed in that case. The first is a notice, dated 10/16/2014, which states that the matter has been discontinued without prejudice, and the second is a judgment signed by New York State Supreme Court Judge Carol E. Huff on *March 6th, 2015*, which states, in sum and substance, that Mr. Charles that a property owned by Mr. Charles is to be sold at foreclosure because Mr. Wayne Charles owes Emigrant Bank $741,767.48 plus the contract default rate of 16% per annum. When Mr. Sanchez-Dorta inquired Mr. Wayne Charles about this debt, he informed him that

the property had been sold and the debt had been paid at the closing.

137. Investigations about why a judgment was attempted to be filed on March 6th, 2015, which judgment contains the signature of a New York State Supreme Court Judge, in a case that had been dismissed without prejudice approximately 9 months before, on October 16, 2014, regarding a property that was already sold after satisfaction of the debt, are ongoing. Fortunately, it seems that the Clerk of the Supreme Court was unwilling to file the judgment in its form, very likely because it had noticed the odd inconsistencies (a matter dismissed without prejudice cannot be revived by a judgment without further paperwork) and labeled the document as an "Unfiled Judgment", stamping the judgment with a statement that "This Judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry counsel must appear in person at the Judgment Clerk's Desk".

138. Now, was the Judge Carol E. Huff bribed to sign this document, or was the Judge simply duped, and by whom? These are matters that can only be determined via discovery. The question of "by whom" will likely be answered by the inquiry of the learned Cicero, "Cui Bono?", who benefits?"

139. It seems that no attorney was so foolhardy as to appear in person at the Judgment Clerk's Desk, and although investigations regarding who submitted the judgment to the Judge Carol E. Huff for her signature, and who attempted to file the judgment with the Clerk of New York County, Supreme Court of the State of New York are ongoing, there seem to be one of two potential scenarios: a) Emigrant Bank and its attorneys are attempting to double dip, or b) Defendants and their allies attempted to file a judgment in a dismissed matter to increase the amount of Plaintiff Wayne Charles debt, thus, boosting the appearance that a Receivership was the only way to protect Mr. Charles creditors (a receivership based upon a $1.5 Million debt [regardless of the fact that the majority of that debt is in doubt] against a property worth approximately $3 Million is a harder sell than a receivership based upon a $2.25 Million debt).

140. It seems that the latter is the likely scenario. One can only imagine what other revelations will appear as this matter develops in the face of threats against Mr. Sanchez-Dorta to drop his prosecution of the matter.

141. Curiously enough, the very Affirmation of Lee Pollock in Support of CPLR 5228 Motion for Appointment of Receiver, dated March 26, 2015, states that "5. *On March 6, 2015* a Judgment and Lien search was obtained for Judgment Debtor Wayne Charles…" [emphasis added]

142. It is likely no coincidence that, the very day Defendant Lee Pollock submitted a judgment and lien search against Plaintiff Wayne Charles, *March 6, 2015*, a faulty judgment (which the county clerk was ultimately unwilling to file) was submitted to a New York Supreme Court judge for her signature.

Now, it is my understanding that the lawyers for Emigrant Bank don't know who secured the judge's signature and attempted to file this Order, since as far as they are concerned their client has been paid. So, who secured the judge's signature and

attempted to file this paper? Very likely, Defendant attorneys, because they were the only ones who stood to benefit from such an Order having been filed. After all, since the Premises, after all (even the questionable) debts against it (about $1.5 Million) has approximate equity of $1.5 Million, as it is worth in the neighborhood of $3 Million, it was necessary for Defendants to add debt against Plaintiff Mr. Charles to present a more convincing case to the Court (which, in any event, didn't need much convincing but needed to justify itself before any potential appeal) that the creditors of Plaintiff Mr. Charles would stand to lose their rights to recover if the Premises were not placed in Receivership.

The above demonstrates that, as this matter proceeds, despite all threats by Defendant attorneys, all of their allegations that the matter is baseless, all their cleverly drafted motions to dismiss, more and more evidence is uncovered suggestion that they have done all those acts spelled out in the Amended Complaint, and perhaps even worse acts.

In Paragraph 5 of his Memorandum of Law, Mr. Shoemaker points out that "Nowhere in the 61-page Amended Complaint is the slightest effort made to explain when, where and how the aforementioned 10 entities and persons got together to enter into this supposed conspiracy. Nor is any attempt made to explain why the State of New York or the Bank of New York Mellon would have anything to do with such a scheme".

Quite frankly, I don't understand why Mr. Shoemaker would believe that, in the 21st Century, it would be necessary for a large group of people to meet at some sort of "roundtable of villains" at a certain date and time in order to conspire to perpetrate a fraud and violate the civil provisions of the RICO Act. We have telephone and mail and

email in the 21th Century, and that seems to be the purpose of establishing laws regarding mail and wire fraud and that is why, upon information and belief, I made allegations in the Amended Complaint regarding mail and wire fraud. The type of scheme laid out in the Amended Complaint, with the various "coincidences", doesn't normally develop spontaneously without some sort of communication between the various parties to the scheme. I merely require that the Court provide me with the opportunity to discover these connections through a fair process of disclosure.

In Paragraph 6, 7, 8 and 9 of his Memorandum of Law, Mr. Shoemaker seems to object to my reference to Cicero, attorney Michael Lippman, Boss Tweed, Sheldon Silver and the "robo-signing" scandal.

Now, since law school, we lawyers have been taught to research and find precedents which might have some bearing on the issue at hand in the instant matter before us. That is something which is normally not so difficult to do. However, in the instant case, it is exceedingly difficult to do, very likely because, among other reasons, 1) the activities of the Defendant lawyers is so outrageous that very few lawyers would risk their license to practice law by engaging in such activities, 2) in the event that lawyers would be willing to assume such a risk, it is unlikely that any plaintiff lawyer would resist the threats that I have been subjected to, the potential backlash from the New York State Court System (the fellows who have a say as to whether I can retain my license to practice law), and the potential costly resistance by a number of deep-pocketed Defendants in order to reveal such a scheme, in defense of a client who will likely not be able to pay the attorney enough to withstand the potential onslaught by the accused.

Thus, I am forced to rely on precedents which, although not legal precedent quoted directly from a presently existing court of law in order to demonstrate to this Court what has occurred in the past, will show the Court that, as incredible as it may sound, these kinds of things actually happen, have happened before, and are happening today.

I reference what occurred in Cicero's defense of Pro Roscio Amerino because, quite frankly, it evidences a pattern of a scheme which has occurred before, and will occur again, and which has occurred in the instant case: utilize the power of the state to neutralize a mark in order to make him powerless against your efforts to steal his property. This reference is relevant to the instant case.

I reference what occurred regarding Michael Lippman to demonstrate how attorneys will utilize, if they can, the state judicial system to extract fees that are not due to them, and then subsequently attempt to avail themselves of the statute of limitations to defend themselves from liability for their unlawful acts. This reference is relevant to this case.

I reference what occurred regarding Sheldon Silver to demonstrate to this Court that the New York State Supreme Court has been compromised, and that, as outrageous as it may seem, personnel within that court are corruptible due to the politicization of that court and other factors. I reference what occurred regarding Sheldon Silver to demonstrate that the New York State Supreme Court, in its present state, cannot be fully trusted to carry out its obligation to dispense unbiased justice in New York State. This reference is relevant to this case.

I state the above regarding the New York State Supreme Court in full recognition of the potential risk to my own license to practice law in the State of New York, so I do not make this statement lightly. The few thousands of dollars paid to me by the Plaintiff, which I know will not continue to be paid to me as I continue this case against 10 (some of whom are quite deeply pocketed) Defendants are, quite simply, not what motivates me to pursue this case.

There are some serious problems at the New York State Supreme Court, and perhaps only the Federal Court will be able to resolve these problems. It is my understanding that the U.S. Attorney has made some inroads into taking on corruption at the New York State Supreme Court, but I am not aware how far that had proceeded, and given the polite retirement of Michael Lippman (who was appointed by his friend Sheldon Silver) a very nice fellow who I met at an event at the Harvard Club a number of months ago (didn't seem bright enough to be the head of all the Courts in New York State, but perhaps I missed something), it seems that there may have been a political resolution of that issue.

Moreover, a fellow like Preet Bharara will likely not be interested in the matter of a fellow like Plaintiff, and his few million dollars which are going to be stolen via an agreement between the Defendants. What Mr. Bharara does not realize, since he does not have his ear to the ground, as I do, is that there are a lot of cases like the instant case. Quite frankly, this is not the only case that has come across me involving potential cooperation and corruption by New York State attorneys and New York State Supreme Court Judges. This is only the first case that I have brought before a Federal Court Judge. The other cases I will likely bring before a Federal Court judge when the conditions are

right. We are dealing with the mass corruption of justice in New York State, the instant case being just one example, and that is why this matter is being set before a Federal Court. What this Court determines to do with this is up to this Court. I would love to correct this problem but think it will be very difficult to do. Thus, I can only truly hope to demonstrate for the sake of posterity that I was aware of this, and that I made the necessary objections.

Fourteen years ago, I was the only one at my company to oppose a project to export gas to Chile, for freezing and export to the US, objecting on the grounds that it would lead to an uprising of the people, the abdication of the President, the election of a Socialist President, and the nationalization of the company. People ridiculed me at the time, yet a year later that project sparked the Bolivian Oil and Gas War, the President of Bolivia was forced to leave the country, a new Socialist President, Evo Morales, was elected (and is still in power), and the Bolivian army marched in and nationalized the company.

I am, thus, bringing up this matter before this Court because I believe that the corruption of justice at the state level is a serious issue that must be addressed in a serious manner. People realize that the state courts are corrupt, but are too intimidated to point this out. The only ones who don't realize it are Federal judges who are unwilling to consider that attorneys and judges (who have gone to law school, passed the Bar exam, and passed certain ethical inquiries) would be willing to do such things for money.

The people are beginning to understand how corrupt the system is, and this is fuel for radicals and demagogues to develop a base of support. Case in point: the possibility that a fellow like Donald Trump will win the Republican nomination and become the

President of the United States. This country, unfortunately, has begun to act more in line with what I saw in Bolivia, than in line with what I expected from this country, which is a problem.

In his book, Predator Nation, Charles Ferguson (director of the Academy Award winning film "Inside Job") explains the risks posed by this Court neglecting to see the larger issues involved in this case, and finding in favor of Defendants in this motion and cross motion. I advise the Court to read, and contemplate, every single sentence below, because they are vastly more significant and insightful than anything stated in this Opposition to Motion and Cross Motion, the words of which are simply and ultimately intended to help the Court truly comprehend the import of what is stated below:

> "*Anyone who has ever lived or worked in a corrupt dictatorship knows what happens. When the system is rigged, when ordinary citizens are powerless, and when whistle-blowers are pariahs at best, three things happen. First, the worst people rise to the top. They behave appallingly, and they wreak havoc. Second, people who could make productive contributions to society are incented to become destructive, because corruption is far more lucrative than honest work. And third, everyone pays, both economically and emotionally; people become cynical, selfish, and fatalistic. Often they go along with the system, but they hate themselves for it. They play the game to survive and feed their families, but both they and society suffer. In America, this issue is rarely mentioned in public or in the media, but in my personal experience it is increasingly discussed in private conversation…This is dangerous. A nation that allows predatory, value-destroying behavior to become systematically more profitable than honest, productive work risks a great deal. America, like all societies, depends heavily on idealism and trust, including the willingness of ordinary citizens to make sacrifices. While many Americans do not realize how unfair their society has become, that condition will not last indefinitely. Unfortunately, it will probably last long enough that the current generation of predators will die wealthy and comfortable. But most of us would not enjoy living in a society dominated by cynicism and dishonesty.*" [2] [Emphasis added]

---

[2] Predator Nation, Charles Ferguson, pages 322-324.

It almost appears that there is nothing to stand in the way of Defendants, and those like Defendants, efforts to utilize the New York State Supreme Court System to unlawfully enrich themselves, as the US attorney has not made any further efforts to deal with the corruption in the New York State Supreme Court, and even if it did it would be unlikely to deal directly in the defense of a fellow like Plaintiff.

Fortunately, a specific Congressional objective is encouraging civil litigation to supplement government efforts to deter and penalize the practices prohibited by the RICO statutes. Another objective of Civil RICO is to turn victims into prosecutors, "private attorneys general", dedicated to eliminating racketeering activity. See Rotella v. Wood. 528 U.S. 549 (2000)

Nevertheless, these "private attorneys general" do not have the resources, nor the ability to engage in the investigations (to request warrants, for example, to tape record telephone calls, etc.) that are necessary to develop a civil RICO Complaint with all the proof present in the Complaint. Nevertheless, Civil RICO specifically has a further purpose of encouraging potential private plaintiffs to *investigate* diligently. Rotella v. Wood, 528 U.S. 549 (2000) and thus Plaintiff Wayne Charles should be permitted to engage in discovery to demonstrate the veracity of his allegations.

The *"private attorney general"* concept holds that a successful private party plaintiff is also entitled to recovery of his legal expenses, including attorney fees, if he has advanced the policy inherent in public interest legislation on behalf of a significant class of persons. Dasher v. Housing Authority of City of Atlanta. Thus, Plaintiff Wayne Charles should be able to resist the efforts of the Defendant attorneys to cut off his means

of financial support and, thus, impact his ability to pursue the current litigation, a point which we address in our cross motion to stay all activity of the New York State Supreme Court regarding the Receivership of the Premises.

Thus, it would appear that only the civil provisions of the RICO act will enable someone to put a stop to what is occurring, on a daily basis, in the New York State Supreme Court.

In Paragraphs 9 of his Memorandum in Law, Mr. Shoemaker attempts to ridicule the allegation that the fact that the lawyer and court attorney "seemed to feign ignorance" at the fact that they knew one another, and I agree that, taken alone, this would seem a specious argument to demonstrate their collusion. I must admit that even I on one occasion mistook one of the attorneys involved in the case, but in my defense I have a problem with my vision due to a botched eye surgery I underwent in Bolivia. Nevertheless, there were too many odd occurrences during that particular appearance and subsequent appearances before the New York State Supreme Court (as spelled out in the Amended Complaint) to allow me, an attorney and a sentient being, to simply "let this slide". Any person, in my shoes, would have realized that these fellows were working together, and what "nailed it" was when the court attorney looked at me, smiled (and I can still see the smile in her face in my memory) and said, "*No, you can make money on this.*"The Amended Complaint alleges, as a for a Fifth Cause of Action, a violation of the Fourteenth Amendment to the United States Constitution – 42 U.S.C. SECTION 1983 (DUE PROCESS). It explains that:

"In particular, Defendant Kern-Rappy has participated in an effort to despoil Plaintiff Wayne Charles of his primary asset, the Premises, by attempting to bribe or otherwise influence his attorney to abide by a scheme to force the Premises into Receivership based on a number of debts the legality of which were in question, including an alleged debt to

the Bank of New York (which had not been foreclosed upon, very likely because the Bank of New York could not legally foreclose on the same), a debt to a former spouse (which has been, in violation of the laws against perjury, drastically exaggerated), a debt to former counsel which raised a whole host of doubts and should have been reported to the Grievance committee by Defendant Kern-Rappy and/or her Judge, Judge Braun, but were not, and to have the judge for whom she works, Judge Braun, to threaten Plaintiff Wayne Charles' attorney, Mr. Sanchez-Dorta, so that he would desist from pursuing the case against her and the other Defendants."

Normally, of course, these types of actions are brought against police officers. For some reason, these types of cases are not often brought against courts. Nevertheless, it is necessary that courts are taken to task by Section 1983 litigators.

Does this Court honestly believe I would risk as much as I have to risk by making these allegations if I didn't believe they were true? I am presently litigating against 10 or so Defendants, four of whom I added in the Amended Complaint, some of whom have very deep pockets, my client may not have any money going forward to support the litigation, and even if I were able to demonstrate that I was entitled to legal fees, that would be a long way down the line and I simply don't have the financial wherewithal to support a litigation of that nature. My bank account on today's date is around $1,500, and most of that is to be paid to others.

I do this, I file this case against these Defendants, quite simply, because it is the right thing to do. Fellows like this simply cannot be permitted to get away with this if we expect to be able to live in a free society. Eventually, if this kind of activity is permitted to occur in the New York State Supreme Court, the people will lose all faith in that court, and the people are a very dangerous animal when they lose all faith. I predicted the Oil and Gas War of 2003 and its aftermath, and I predict this country's descent into chaos (and we are already seeing some of that in the Donald Trump phenomenon) and then

something akin to military rule if issues like this are not properly resolved. You think I exaggerate? The fellows in Bolivia thought I exaggerated too, and now they believe I have a crystal ball of sorts and reach out to me when they want to purchase a piece of property.

I have lived under something akin to military rule in a third world country, and I can tell you that it is not a very pleasant experience, and something we don't want here. I It seems to me that he first step towards avoiding such a situation is granting justice to someone who has been harmed.

## CONCLUSION

For the foregoing reasons, Plaintiff Wayne Charles. Sr. respectfully requests that this Court does not dismiss the Amended Complaint without prejudice and without leave to appeal, does not strike any of the allegations set forth in the Amended Complain other than those agreed to above,

March 15, 1016

THE LAW OFFICE OF J.A SANCHEZ-DORTA, P.C.

By: /s/ J.A. Sanchez
JS3070
Attorney for Plaintiff Wayne Charles, Sr.
225 Broadway, Suite 1901
New York, NY 10007
janthonysanchez@post.harvard.edu