UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

WAYNE CHARLES SR.,

                        Plaintiff,

              -v-

RICHARD LEVITT; NICHOLAS KAIZER; LEVITT &
KAIZER; GLENDA CHARLES; BRENDAN WHITE;
MICHELLE KERN-RAPPY; THE BANK OF NEW YORK
MELLON CORPORATION; THE STATE OF NEW
YORK; PAUL A. SHNEYER; LEE POLLOCK,

                        Defendants.

15 Civ. 9334 (PAE)

OPINION & ORDER

------------------------------------------------------------------ X
------------------------------------------------------------------ X

WAYNE CHARLES and WAYNE CHARLES II,

                        Plaintiffs,

              -v-

LEE A. POLLOCK; POLLOCK & MAGUIRE, LLP;
RICHARD LEVITT; NICHOLAS KAIZER; LEVITT &
KAIZER; PAUL A. SHNEYER; GLENDA CHARLES;
BRENDAN WHITE; MICHELLE KERN-RAPPY,

                        Defendants.

15 Civ. 9758 (PAE)

OPINION & ORDER

------------------------------------------------------------------ X

**PAUL A. ENGELMAYER, District Judge:**

        Plaintiff Wayne Charles Sr. and his son Wayne Charles II bring claims against a variety

of individuals and entities connected with a New York State Supreme Court proceeding in which

a receiver was appointed to administer and sell real property owned by the elder Charles in

satisfaction of a longstanding judgment debt.  In 15 Civ. 9334 ("the Earlier-Filed Action"),

Charles Sr. ("Charles") alleges that defendants conspired to profit from the sale of his property by defrauding him and the state court, in violation of, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act ("RICO").  In 15 Civ. 9758 ("the Later-Filed Action"), Charles and his son, proceeding *pro se* against many of the same defendants, allege violations of the Fair Debt Collection Practices Act ("FDCPA").  Defendants move to dismiss both actions, and, in the Earlier-Filed Action, move for sanctions.  For the following reasons, the Court grants the motions to dismiss with prejudice and grants the motions for sanctions.

## I.      The Earlier-Filed Action

The Court begins by addressing the Earlier-Filed Action.

### A.      Background

#### 1.      Facts

The Court summarizes the essential facts alleged in the 60-page Amended Complaint, Dkt. 36 ("AC" or "Amended Complaint"), assuming all well-pled allegations to be true.  *See Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  The Court also considers documents attached to, incorporated by, or integral to the Amended Complaint, as well as matters of which judicial notice may be taken, such as public court documents.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Weinstein v. City of New York*, 622 F. App'x 45, 46 (2d Cir. 2015) (summary order).

First, the parties:  Plaintiff Charles is an individual residing in Manhattan.  AC ¶ 4. Defendants Richard Levitt, Nicholas Kaizer, Brendan White, Michelle Kern-Rappy, and Lee Pollock are attorneys licensed by the State of New York and domiciled therein.  AC ¶¶ 6–9, 13. Defendant Levitt & Kaizer is a law firm with its place of business in Manhattan.  AC ¶ 5. Defendant Paul A. Shneyer is an individual domiciled in New York.  AC ¶ 10.  Defendant Glenda Charles is an individual domiciled in New Jersey.  AC ¶ 11.  Defendant Bank of New

York Mellon Corporation ("BNY Mellon") is an "American multinational banking and financial services corporation." AC ¶ 12.

Charles was represented by Levitt in a criminal jury trial in this District, which resulted in Charles's conviction, on March 31, 2009, on counts of mail fraud, conspiracy to commit mail fraud, and making false statements.[1] *See* 08 Cr. 243 (KMK), Dkt. 53; AC ¶ 1. Charles alleges that, on March 24, 2009—towards the end of the trial—Levitt presented Charles with an Affidavit of Confession of Judgment for unpaid legal fees of $150,000 purportedly due to Levitt & Kaizer. AC ¶¶ 1–2; *see* Dkt. 54 ("Dawson Decl."), Ex. 1, at 4 ("Affidavit of Confession of Judgment"). Charles alleges that he signed this document, even though the fees were not actually due, because Levitt threatened to withdraw from the case if he did not. AC ¶¶ 3–4, 42. On its face, the affidavit was notarized by White on March 24, 2009, but Charles denies signing this document in the presence of a notary.[2] AC ¶ 17. On March 25, 2009, a Judgment was entered for Levitt & Kaizer in New York State Supreme Court (Case No. 09-104127) in the amount of $150,225.[3] *See* Dawson Decl., Ex. 1, at 3 ("Judgment").

Fast forward six years: On March 26, 2015, Levitt & Kaizer moved, under New York CPLR § 5228, for appointment of a receiver to take possession of, administer, and sell property owned by Charles located at 80 West 120th Street, New York, NY ("the Property"). *See* Dawson Decl., Ex. 2 ("State Court Filings"). Levitt & Kaizer claimed that Charles had taken no action to satisfy the judgment during the intervening six years, and identified the Property as Charles's

---

[1] The proceedings in Charles's criminal case are not relevant here, but the Court notes that Charles was granted a new trial, *see United States v. Post*, 950 F. Supp. 2d 519 (S.D.N.Y. 2013), and then, in November 2015, convicted anew. *See* 08 Cr. 243 (KMK), Dkt. 160. Post-trial motions are pending.

[2] The Amended Complaint impugns White's integrity by alleging that his attorney registration is "delinquent." AC ¶ 17.

[3] The additional $225 reflected court costs.

only significant asset.  *See id.*  Justice Richard F. Braun issued an Order to Show Cause on

March 27, 2015.  *Id.* at 3–7.  Defendant Glenda Charles then filed an affidavit in support of

Levitt & Kaizer's motion, claiming that she was also a judgment creditor by virtue of unpaid

child support arrears.  *See* Dawson Decl., Ex. 3.

On September 28, 2015, Justice Braun issued an Order appointing Levitt & Kaizer as

receiver over the Property.  State Court Filings at 63–65.  On October 2, 2015, Justice Braun

ordered that defendant Shneyer be appointed receiver, in place of Levitt & Kaizer.  *Id.*, Ex. 5

("Order Appointing Receiver").  On April 19, 2016, Justice Barbara Jaffe—Justice Braun having

recused himself at Charles's request—denied Charles's motion to vacate the Order Appointing

Receiver and lifted any temporary restraints on the receivership.  *See*

http://www.courts.state.ny.us/Reporter/pdfs/2016/2016_30794.pdf.  Finally, as the publicly

available docket reveals, on June 30, 2016, Justice Jaffe denied Charles's application to stay the

state court proceedings.

In this action, through his attorney J.A. Sanchez, Esq.,[4] Charles alleges a wide-ranging

conspiracy involving many of the aforementioned individuals and more:  Michelle Kern-Rappy,

who oversaw settlement conferences in her role as Justice Braun's court attorney; Lee Pollock,

who represented Levitt & Kaizer in the 2015 state court proceedings; and BNY Mellon, which

holds the mortgage on the Property.  The alleged object of the conspiracy was to "unlawfully

derive profit from the sale of the [Property] through overbilling, fraud, bribery of officers of the

court, obstruction of justice, extortion, threat of financial harm, and other acts."  AC ¶ 57; *see*

*also* AC ¶ 71 (alleging that Kaizer threatened to sell the Property at a "Fire Sale Price" of $1.5

million, less than half its value).  Charles claims injury to his "business or property," AC ¶¶ 154,

---

[4] Alternative formulations of counsel's name appearing in the record include Jay Anthony
Sanchez and J.A. Sanchez-Dorta.

4

161; seeks "actual damages" in excess of $4 million as well as "disgorgement of those profits attributable to the fraud" in the same amount, AC ¶ 173; and an injunction against the receivership, AC ¶ 189.

### 2.    Procedural History

The initial Complaint in this action was filed on November 27, 2015, Dkt. 1, the same day a substantially identical Complaint was voluntarily dismissed in an earlier-filed action, 15 Civ. 8283.  The Complaint named as defendants Levitt & Kaizer, Richard Levitt, Nicholas Kaizer, Brendan White, Glenda Charles, Michelle Kern-Rappy, and Paul A. Shneyer.

On February 11, 2016, following a motion to dismiss, plaintiff filed the Amended Complaint.  It added Lee Pollock, the State of New York, and BNY Mellon as defendants.  It purports to bring seven causes of action:  (1) participation in a RICO enterprise through a pattern of racketeering activity; (2) conspiracy to engage in a pattern of racketeering activity (collectively, "RICO claims"); (3) fraudulent misrepresentation; (4) civil conspiracy to defraud and commit grand larceny; (5) § 1983 due process violations; (6) a *Monell* claim against Kern-Rappy and the State of New York; and (7) a general claim for injunctive relief.  Besides injunctive relief, plaintiff seeks damages "believed to be in excess of $4,000,000," plus attorney's fees and costs.

On February 25, 2016, defendant Glenda Charles and defendants Levitt & Kaizer, Levitt, Kaizer, and Pollock ("Levitt Defendants") filed separate motions to dismiss.  Dkts. 48, 52.  That same day, defendants Kern-Rappy and the State of New York filed answers.  Dkts. 55, 57.  (On May 24, 2016, these same defendants moved to dismiss.  Dkt. 93.)  On March 4, 2016, defendant Shneyer answered.  Dkt. 62.  On June 22, 2016, defendant BNY Mellon Corporation moved to dismiss.  Dkt. 103.  Defendant Brendan White was never served, so far as the docket reveals.

On March 21, 2016, plaintiff filed an opposition brief, Dkt. 69, and a "cross motion" for injunctive relief staying the receivership, Dkt. 70.  On March 30, 2016, the Levitt Defendants filed a reply brief.  Dkt. 73.  On March 31, 2016, Glenda Charles filed a reply brief.  Dkt. 75.

On April 15, 2016, the Levitt Defendants moved for sanctions under Federal Rule of Civil Procedure 11.  Dkt. 77.  On April 26, 2016, Glenda Charles also moved for sanctions.  Dkt. 82.

On May 20, 2016, plaintiff filed a brief opposing the sanctions motions.  Dkt. 92.  On May 27, 2016, Glenda Charles (Dkt. 96) and the Levitt Defendants (Dkt. 98) filed reply briefs.

**B.      Motion to Dismiss**

Defendants move to dismiss both under Rule 12(b)(1) and Rule 12(b)(6).

**1.        Applicable Legal Principles**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted).  The Court may properly refer to matter outside the pleadings when considering the existence of jurisdiction on a motion pursuant to Rule 12(b)(1). *Makarova*, 201 F.3d at 113.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where,

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, the complaint's *factual* allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

> ### 2.     Analysis

Defendants move to dismiss the Amended Complaint on several grounds. First and foremost, they argue that the Court lacks subject matter jurisdiction because of the *Rooker–Feldman* doctrine.

The decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The Supreme Court has "confined" this principle to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Thus, the *Rooker–Feldman* doctrine has four requirements: (1) the plaintiff lost in state court (2) before the district court proceedings commenced; (3) the

plaintiff complains of injuries caused by a state court judgment; and (4) the plaintiff invites
district court review and rejection of that judgment. *Hoblock*, 422 F.3d at 85.

The first two requirements are clearly met here:  Charles lost in state court by virtue of
the $150,225 judgment entered against him and the appointment of a receiver over the Property,
both of which occurred before the Complaint in this case was filed.

The third requirement—that the plaintiff's complained-of injuries were caused by a state
court judgment—is also satisfied.  This assessment is complicated, somewhat, by the fact that
Charles's alleged injuries are vaguely and conclusorily pled. *See, e.g.*, AC ¶¶ 154, 161 (alleging
"injury to [plaintiff's] business or property"); AC ¶ 169 ("Plaintiff(s) have been significantly
damaged by those Defendants' fraudulent misrepresentations.").  His prayer for at least $4
million in damages purports to include "both the value of the [Property], and other damages,"
AC ¶ 170, but these "other damages" are never specified.  Instead, the encumbrance and
threatened alienation of the Property—the direct result of the 2009 Judgment and the 2015 Order
Appointing Receiver—are the only damages that Charles has clearly pled.  Thus, Charles "seeks
to redress injuries that are a direct result of the state-court judgment and subsequent attempts to
enforce it." *Roberts v. Perez*, No. 13 Civ. 5612 (JMF), 2014 WL 3883418, at *3 (S.D.N.Y. Aug.
7, 2014).

Finally, the fourth requirement—inviting district court review and rejection of the state
court judgment—is met here.  To be sure, Charles does not, explicitly, seek to *vacate* the state
court judgment.  He seeks an injunction against the receivership, plus money damages.  But
"such artful pleading is insufficient to bypass *Rooker–Feldman*." *Id.* (citing *Hoblock*, 422 F.3d
at 88).  Charles's theory of entitlement to relief is entirely grounded on the claim that the state
court judgment and the affidavit on which it was based were fraudulently procured. *See, e.g.*,

8

AC ¶ 33.  Such claims are barred.  *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d

423, 427 (2d Cir. 2014) ("To the extent Vossbrinck asks the federal court to grant him title to his

property because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman* bars

Vossbrinck's claim."); *Brown v. Wells Fargo Bank, N.A.*, 605 F. App'x 58, 59 (2d Cir. 2015)

(summary order).  In short, "there is not a fraud exception to the *Rooker–Feldman* doctrine."

*Gurdon v. Doral Bank*, No. 15 Civ. 5674 (GBD) (JLC), 2016 WL 721019, at *6 (S.D.N.Y. Feb.

23, 2016), *report and recommendation adopted*, 2016 WL 3523737 (S.D.N.Y. June 22, 2016).

To be sure, the Second Circuit has held that *Rooker–Feldman* does not bar claims based

on "injuries [plaintiff] suffered from [defendants'] alleged fraud, the adjudication of which does

not require the federal court to sit in review of the state court judgment." *Vossbrinck*, 773 F.3d

at 427; *see also Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (summary

order).  So, where a plaintiff alleges damages directly caused by defendants' misconduct—*not* by

the state court judgment which the misconduct allegedly produced—*Rooker–Feldman* does not

bar that claim.  *See Gonzalez v. Deutsche Bank Nat. Trust Co.*, 632 F. App'x 32, 34 (2d Cir.

2016) (summary order) ("To the extent plaintiffs' complaint can be liberally construed to allege

injury stemming from the same transaction but not directly *caused* by the foreclosure judgment,

their claims are not barred by *Rooker–Feldman*."); *Schuh v. Druckman & Sinel, L.L.P.*, No. 07

Civ. 366 (LAK) (GWG), 2008 WL 542504, at *7 (S.D.N.Y. Feb. 29, 2008) ("[If] the claim is

that the process of procuring the judgment caused some independent injury, then such a claim

would not be barred by the *Rooker–Feldman* doctrine."), *report and recommendation adopted*,

602 F. Supp. 2d 454 (S.D.N.Y. 2009).  But a prayer for money damages is not sufficient to

escape the ambit of *Rooker–Feldman* where granting such relief would still require the federal

court to sit in review of a state court judgment.  *See Bridgewater Operating Corp. v. Feldstein*,

346 F.3d 27, 30 (2d Cir. 2003) ("[P]laintiffs' RICO charges and related claims in essence seek

damages for losing the Premises to [defendant], which directly implicates the propriety of the

state court Judgment [in which defendant was awarded specific performance of his contract to

purchase the property].") (alterations and internal quotation marks omitted); *Roberts*, 2014 WL

3883418, at *3 ("Plaintiff suffered no tangible injuries prior to the issuance of the state-court

judgment.").

 The Amended Complaint is a sufficiently baffling document that it is difficult to say for

certain just what injuries are alleged.  But the overwhelming thrust is that defendants allegedly

conspired to gain control of and to liquidate the Property, which they will accomplish if this

Court does not enjoin the state court's appointed receiver.  *See, e.g.*, AC ¶ 124 (warning that "if

this Court fails to stop the Receivership," "these fellows will receive a satisfaction of

approximately $900,000"); AC ¶ 166 (alleging that the fraud was "finally consummated" by the

submission of "fraudulent papers" in New York state court).  The *Rooker–Feldman* doctrine bars

such a claim.[5]

 In the alternative, the Court holds that the Amended Complaint fails to state a claim.  As

to the First and Second Causes of Action—the RICO claims—the Amended Complaint does not

plausibly allege that defendants participated in or conspired to participate in an enterprise

through a pattern of racketeering activity.[6]  As to the Third and Fourth Causes of Action—for

---

[5] Although the rationale underlying the *Rooker–Feldman* doctrine is "undercut if plaintiff had neither a practical reason nor a legal basis to appeal the state-court decision that caused her alleged injuries," *Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009), there is no indication that such is the case here.

[6] Among a multitude of shortcomings, the Amended Complaint "does not even specify *what* two predicate acts *each* defendant participated in, let alone allege sufficient predicate acts generally." *Hoatson v. New York Archdiocese*, No. 05 Civ. 10467 (PAC), 2007 WL 431098, at *10 (S.D.N.Y. Feb. 8, 2007), *aff'd*, 280 F. App'x 88 (2d Cir. 2008) (summary order).  To the extent

fraudulent misrepresentation and civil conspiracy to defraud—plaintiff fails to allege the circumstances constituting fraud with the particularity required by Federal Rule of Civil Procedure 9(b). As to the Fifth Cause of Action—for due process violations—there are no plausible allegations that would state a due process claim, as Charles has had every opportunity to litigate his fraud claims in state court. Finally, as to the Sixth Cause of Action—the *Monell* claim—there are no remotely non-conclusory allegations about governmental policies, practices, or customs.

### C.   Motion for Sanctions

#### 1.   Applicable Legal Principles

Under Federal Rule of Civil Procedure 11(c), a court, by a party's motion or on its own, may impose appropriate sanctions on "any attorney, law firm, or party that violated" Rule 11(b) or is responsible for the violation. Rule 11(b) provides that:

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Rule 11(c)(2) sets forth the procedure to be followed where an opposing party pursues sanctions based on an attorney's court submissions. The "motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule

---

possible predicate acts are even hinted at, they are pled in utterly conclusory and implausible terms. *See, e.g.*, AC ¶¶ 104–08 (alleging that Kern-Rappy "in effect" attempted to bribe plaintiff's counsel by stating, "You could make money on this," devoid of context).

11(b)." Rule 11(c)(2) also creates a "safe harbor" that gives the attorney a chance to modify or withdraw the challenged submission so as to avoid sanctions. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 89–90 (2d Cir. 2003).

Under Rule 11(c)(2), a motion for sanctions is initially to be served only on the attorney, and not filed with the Court. The motion is to be filed with the Court only if, 21 days after such service, the challenged submission has not been "withdrawn or appropriately corrected." Sanctions may not be awarded under Rule 11(c)(2) where proper notice and opportunity to withdraw or correct the filing were not provided to the party to be sanctioned. *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010).

When a sanctions motion has been properly filed, the Court may impose sanctions if the offending attorney responsible for the submission is found to have acted with "objective unreasonableness." *Pennie & Edmonds LLP*, 323 F.3d at 90. In other words, Rule 11 is violated if a pleading is submitted "for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (internal quotation marks omitted). When a party's legal contentions are challenged as violating Rule 11, "[t]he operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify, or reverse the law as it stands." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (internal quotation marks omitted).

The Second Circuit has further advised that courts must provide notice and opportunity to be heard before imposing any sanctions. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d

12

323, 334 (2d Cir. 1999).  The notice requirement, at a minimum, "mandates that the subject of a

sanctions motion be informed of (1) the source of authority for the sanctions being considered;

and (2) the specific conduct or omission for which the sanctions are being considered so that the

subject of the sanctions motion can prepare a defense." *Id.*  The moving party's Rule 11 motion

papers can satisfy the notice requirement, and an opportunity to submit written briefs in

opposition to a Rule 11 motion can constitute a sufficient opportunity to be heard.  *See Margo v.*

*Weiss*, 213 F.3d 55, 64 (2d Cir. 2000).  Although the Second Circuit favors oral argument on

Rule 11 sanctions motions, the district court is not obliged to hold a hearing, particularly where

none has been requested.  *See id.*; *Schlaifer Nance & Co.*, 194 F.3d at 335–36.

A Rule 11 sanction must be sized to achieve deterrence.  "A sanction imposed under this

rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by

others similarly situated."  Fed. R. Civ. P. 11(c)(4).  A court fashioning a deterrent sanction has

"broad discretion" to "tailor[] appropriate and reasonable sanctions."  *O'Malley v. N.Y.C. Transit*

*Auth.*, 896 F.2d 704, 709 (2d Cir. 1990).  "Where a district court concludes that a monetary

award is appropriate, its broad discretion extends to determining the amount of the award" and

"including an award of attorney's fees where warranted."  *Lawrence v. Wilder Richman Sec.*

*Corp.*, 417 F. App'x 11, 15 (2d Cir. 2010) (summary order).

> 2.      **Analysis**

Applying these principles, the Court is constrained to find that sanctions pursuant to Rule

11(b)(2) are appropriate here.

First, the procedural requirements of Rule 11 are met.  The motions for sanctions filed by

the Levitt Defendants and by Glenda Charles were made separately, and plaintiff's counsel was

provided with 21 days to withdraw or correct the filing.  *See* Dkt. 78, Ex. 9 (12/15/15 letter); *id.*,

Ex. 10 (1/13/16 letter); Dkt. 87, Ex. 1 (2/9/16 letter).  Counsel did not do so.

As to objective unreasonableness, the Court emphasizes that the Amended Complaint names defendants about whom it alleges positively *no* improper conduct—indeed hardly any conduct at all. For instance, Paul A. Shneyer, the court-appointed receiver, is named as a defendant apparently on the sole basis that he knows Justice Braun personally, implying that there was some improper collusion. AC ¶¶ 119, 124, 130. Lee Pollock is named as a defendant—indeed, he is accused of being the "second in command" of a RICO enterprise, AC ¶ 148—primarily because plaintiff suspects that he helped prepare Glenda Charles's affidavit regarding child support arrears. *See* AC ¶¶ 46, 50. The basis for this belief is that the affidavit was notarized by a notary public from Westchester County, the same county where Pollock has his office. AC ¶ 50. This sort of wild speculation is wholly inadequate to support any sort of claim. Plaintiff's counsel was objectively unreasonable in believing otherwise.

Moreover, the Amended Complaint is shot-through with plainly irrelevant, absurd, and/or scurrilous statements. For instance, the Amended Complaint:

  i.   consistently alleges that plaintiff *believes* key factual propositions to true, rather than alleging that they *are* true, *see, e.g.*, AC ¶¶ 45–46 (plaintiff believes that Levitt, Kaizer, and Pollock assisted his ex-wife in preparing her affidavit); AC ¶ 51 (plaintiff believes that defendants "conspired in their efforts to outmaneuver him and to attempt to incarcerate him in order to more easily loot his possessions");[7]

  ii.  complains at length about the quality of Levitt's representation in Charles's criminal case, *see* AC ¶¶ 20–31;

  iii. attempts to buttress its RICO theory by discussing the plot of "The Firm"— the 1993 movie based on a John Grisham novel, AC ¶ 41;

  iv.  attempts to argue that the alleged conspiracy is "not so far fetched" because it is allegedly similar to a plot foiled by Cicero over 2000 years ago, AC ¶ 56;

---

[7] *See Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 207 (E.D.N.Y. 2006) (disregarding "conclusory allegations of belief"); *Patel v. L-3 Commc'ns Holdings Inc.*, 14 Civ. 6038 (VEC), 2016 WL 1629325, at *9 (S.D.N.Y. Apr. 21, 2016) (expressing doubt that court should "accept an allegation of belief as being equivalent to a statement of fact as to the matter believed").

v.      attempts to bootstrap the allegations by asserting that, several years ago,
        Charles's counsel alleged a totally unrelated deed-fraud scheme of a sort that
        subsequent journalistic investigation found to be prevalent, *see* AC ¶¶ 127–29;

vi.     describes the completely unrelated misconduct of a lawyer in the Bronx,
        apparently in the service of conclusory allegations that "the New York State
        Courts are not as corruption free as one might assume they should be," *see* AC
        ¶¶ 58–68, 91;

vii.    reproduces long excerpts from newspaper articles about Sheldon Silver, to
        similar effect, *see* AC ¶¶ 93–94;

viii.   relies extensively on the utterly irrelevant opinions of counsel, including
        counsel's baseless perception that defendants were "protesting too much" by
        making facially benign statements, *see* AC ¶¶ 52, 100, 103, 114; and

ix.     insinuates that the motivation behind the supposed scheme to fleece Charles
        was that "[p]rivate schools, and membership at the better clubs, don't come
        cheaply, after all, and desperate times call for desperate measures," AC ¶ 123.

Plaintiff's counsel could not reasonably have believed that these "allegations" were material—

not even as background or commentary. Such irrelevant mudslinging serves merely to inflame,

not to enlighten.

The Court is guided substantially by Judge Crotty's reasoned and restrained decision

sanctioning an attorney $8,000 for bringing RICO claims against several Roman Catholic

Archdioceses and leaders in connection with alleged sexual abuse. *See Hoatson v. New York*

*Archdiocese*, No. 05 Civ 10467 (PAC), 2007 WL 431098, at *1 (S.D.N.Y. Feb. 8, 2007), *aff'd*,

280 F. App'x 88 (2d Cir. 2008) (summary order). Judge Crotty recognized that "Rule 11 is

particularly important in [RICO] cases because commencement of a civil RICO action has an

almost inevitable stigmatizing effect on those named as defendants." *Id.* at *9 (quoting *Katzman*

*v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996)) (internal quotation marks

omitted). And the complaint before Judge Crotty—besides its manifest legal shortcomings, also

present here, *see supra* note 6—was, like the Amended Complaint, "littered with wholly

irrelevant [and] inflammatory" allegations. *Id.* at *15.

The Court therefore grants the motion for sanctions. Although the Court is tempted to award attorneys' fees, the Court determines that a modest payment to the Court will have the necessary deterrent effect, and accurately capture the burden that frivolous complaints impose on the courts. Therefore, the Court directs plaintiff's counsel to pay $1,000 to the Southern District of New York.

## II.   The Later-Filed Action

The Court now turns to the Later-Filed Action, in which Charles and his son bring FDCPA claims against many of the same defendants named in the Earlier-Filed Action.

### A.   Background

#### 1.   Facts

The *pro se* Amended Complaint, Dkt. 39 ("AC"[8] or "Amended Complaint"), alleges that defendants violated various provisions of the FDCPA by serving plaintiffs with the March 27, 2015 Order to Show Cause, signed by Justice Braun, and the supporting papers on which it was granted. Specifically, the Amended Complaint alleges that this "communication" violated 15 U.S.C. § 1692g,[9] *see* AC ¶ 21; 15 U.S.C. § 1692e,[10] *see* AC ¶ 28(a); and 15 U.S.C. § 1692f,[11] *see* AC ¶ 28(b).

---

[8] Henceforth, "AC" refers to the Amended Complaint in the Later-Filed Action.

[9] Section 1692g(a) provides:
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain

### 2.   Procedural History

On December 15, 2015—a few weeks after filing the Complaint in the Earlier-Filed

Action—plaintiffs filed the Complaint in this case, naming Pollock, his law firm (Pollock &

---

verification of the debt or a copy of a judgment against the consumer and a copy of such
verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the
debt collector will provide the consumer with the name and address of the original
creditor, if different from the current creditor.

[10] Section 1692e provides:
A debt collector may not use any false, deceptive, or misleading representation or means
in connection with the collection of any debt.  Without limiting the general application of
the foregoing, the following conduct is a violation of this section:  [. . .]
(2) The false representation of—
     (A) the character, amount, or legal status of any debt; or
     (B) any services rendered or compensation which may be lawfully received by
     any debt collector for the collection of a debt.  [. . .]
(5) The threat to take any action that cannot legally be taken or that is not intended to be
taken.  [. . .]
(10) The use of any false representation or deceptive means to collect or attempt to
collect any debt or to obtain information concerning a consumer.
(11) The failure to disclose in the initial written communication with the consumer and,
in addition, if the initial communication with the consumer is oral, in that initial oral
communication, that the debt collector is attempting to collect a debt and that any
information obtained will be used for that purpose, and the failure to disclose in
subsequent communications that the communication is from a debt collector, except that
this paragraph shall not apply to a formal pleading made in connection with a legal
action.  [. . .]

[11] Section 1692f provides:
A debt collector may not use unfair or unconscionable means to collect or attempt to
collect any debt.  Without limiting the general application of the foregoing, the following
conduct is a violation of this section:
(1) The collection of any amount (including any interest, fee, charge, or expense
incidental to the principal obligation) unless such amount is expressly authorized by the
agreement creating the debt or permitted by law.  [. . .]
(6) Taking or threatening to take any nonjudicial action to effect dispossession or
disablement of property if—
     (A) there is no present right to possession of the property claimed as collateral
     through an enforceable security interest;
     (B) there is no present intention to take possession of the property; or
     (C) the property is exempt by law from such dispossession or disablement.  [. . .]

Maguire, LLP), Levitt, Kaizer, Levitt & Kaizer, Shneyer, and Glenda Charles as defendants. Dkt. 1. On January 13, 2016, the case was reassigned to this Court as related to the Earlier-Filed Action.

On January 13, 2016, Shneyer answered. Dkt. 12. On February 19, 2016, the Levitt Defendants, plus Pollock & Maguire, filed a motion to dismiss. Dkt. 18. On February 23, 2016, Glenda Charles filed a motion to dismiss. Dkt. 27.

On April 29, 2016, plaintiffs filed the Amended Complaint.[12] The moving defendants shortly thereafter notified the Court that they relied on their previously filed motions to dismiss. Dkts. 40, 41. On June 28, 2016, plaintiffs filed a memorandum in opposition. Dkt. 54.

### B.    Applicable Legal Principles

Beyond the principles stated in Section I(B)(1) *supra*, the Court is required to read a *pro se* plaintiff's complaint liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and to interpret it as raising the strongest arguments it suggests, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

### C.    Analysis

First, any claims under 15 U.S.C. § 1692g must be dismissed because that section contains an exemption for any "communication in the form of a formal pleading in a civil action." 15 U.S.C. § 1692g(d); *see also Oliver v. U.S. Bancorp*, No. 14 Civ. 8948 (PKC), 2015 WL 4111908, at *4 (S.D.N.Y. July 8, 2015) (dismissing claims pursuant to § 1692g arising out of state court submissions in a foreclosure action); *Jerman v. Carlisle, McNellie, Rini, Kramer &*

---

[12] The Amended Complaint added White and Kern-Rappy as defendants, but it does not appear that either was served.

*Ulrich LPA*, 559 U.S. 573, 605 n.22 (2010) (recognizing this recent amendment to the FDCPA). There is no doubt that the Order to Show Cause and the supporting papers constituted a "formal pleading." *See Christian, Klein, & Cogburn v. Nat'l Ass'n of Sec. Dealers, Inc.*, 970 F. Supp. 276, 278 (S.D.N.Y. 1997) (Sotomayor, J.) ("[U]nder New York law, the pleading which initiates a proceeding is an order to show cause or a notice of petition.").

The same exemption for legal pleadings applies to claims under § 1692e(11), which requires disclosure in initial communications that a debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. But no similar exemption for legal pleadings applies to other claims under §§ 1692e and 1692f. *See Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) ("[Congress] created no analogous exception for § 1692e's general prohibition on false statements.").

Sections 1692e and 1692f forbid "any false, deceptive, or misleading representation[s]" in connection with debt collection (§ 1692e) and "unfair or unconscionable means to collect or attempt to collect any debt" (§ 1692f). They also list, non-exhaustively, types of conduct that fall within these broad prohibitions.

"Whether a collection letter is false, deceptive, or misleading under the FDCPA is determined from the perspective of the objective least sophisticated consumer. Under this standard, collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015) (citation and internal quotation marks omitted). The Second Circuit has "carefully preserved the concept of reasonableness." *Avila v. Riexinger & Assocs., LLC*, No. 15 Civ. 1584, 2016 WL 1104797, at *1 (2d Cir. Mar. 22, 2016) (summary order) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008)). The FDCPA "does not aid

plaintiffs whose claims are based on bizarre or idiosyncratic interpretations of collection notices." *Id.*

The Amended Complaint does not identify *which* statements in the Order to Show Cause and the supporting papers were allegedly false, deceptive, misleading, or *which* means of collection were allegedly unfair or unconscionable. Instead, it alleges that defendant Pollock "knew, or should have known" that the $150,000 debt—the subject of the Order to Show Cause—was either disputed or not owed. AC ¶ 27. This allegation is entirely conclusory. It is, moreover, *contradicted* by the supporting papers themselves. These include, *inter alia*, Charles's 2013 application for CJA counsel in his criminal case, in which he acknowledges—not disputes—the $150,225 debt. *See* AC, Ex. C.

Therefore, the Amended Complaint fails to state a claim under the FDCPA.[13]

## III.    Leave to Amend

As plaintiff has, in both cases, already amended his Complaint once in response to motions to dismiss, both dismissals will be with prejudice. *Cf. Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (alterations and internal quotation marks omitted). Moreover, the Court concludes that, in both cases, amendment would be futile and would serve only to further harass defendants.

---

[13] All other arguments and claims put forward in plaintiffs' voluminous submissions are, likewise, rejected and dismissed.

## CONCLUSION

In both 15 Civ. 9334 and 15 Civ. 9758, the Amended Complaints are dismissed with prejudice.[14]  Further, in 15 Civ. 9334, the Court imposes sanctions on plaintiff's counsel, and directs plaintiff's counsel to pay $1,000 to the Clerk of Court of the Southern District of New York.  Such payment is due within one week (*i.e.*, by July 28, 2016).

The Clerk is respectfully directed to close these cases.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 21, 2016
       New York, New York

---

[14] Although Shneyer has answered in both actions, all of the above grounds for dismissal—lack of subject matter jurisdiction and failure to state a claim—apply equally to claims against him.